UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
………………………………………………..…………x
TIMOTHY SCHROEDER,

                Plaintiff,              **MEMORANDUM AND ORDER**
                                                    12-cv-3657 (DRH)(SIL)

    -against-

THE COUNTY OF NASSAU, THE NASSAU COUNTY
SHERIFF'S DEPARTMENT, THE CITY OF LONG
BEACH, LONG BEACH POLICE OFFICERS LEE
NIELSEN, SHLD #209, individually and in his capacity as
police officer, SGT. JOHN WHELAN, individually and in
his capacity as police officer, and JOHN DOES 1-20,
individually and in their capacities as police officers,

                Defendants.
…………………………………………………….…x

**APPEARANCES:**

Attorneys for the plaintiff:
**Georgklis & Mallas**
9118 5th Avenue
Brooklyn, NY 11209
By:    Kostantinos Mallas, Esq.

Attorneys for the defendants City of Long Beach, City of Long Beach Police Department, Long Beach Police Officers Lee Nielsen and John Whelan
**Corporation Counsel, City of Long Beach**
One West Chester Street
Long Beach, New York 11561
By:    Charles Michael Geiger, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Timothy Schroeder ("plaintiff") commenced this action pursuant to 42 U.S.C. §

1983 alleging, *inter alia*, that defendants County of Nassau, Nassau County Sheriff's

Department, City of Long Beach, City of Long Beach Police Department, Long Beach Police

Officer Lee Nielsen ("Nielsen" or "Officer Nielsen"), Long Beach Police Sergeant John Whelan

("Whelan" or "Sergeant Whelan"), and John Does 1-20 violated his rights under the Fourth Amendment of the United States Constitution by subjecting him to excessive force.

Presently before the Court is a motion made by the City of Long Beach, City of Long Beach Police Department, Officer Nielsen, and Sergeant Whelan (collectively "defendants") seeking dismissal of the Complaint. For the reasons set forth below, the defendants' motion is granted.

## *BACKGROUND*

The following facts are taken from the parties' Local Rule 56.1 Statements and other evidentiary submissions and are undisputed unless otherwise noted.

This action arises out of a car stop and subsequent car chase, foot chase, and arrest occurring on July 25, 2011. On that day, plaintiff attended a barbeque in Patchogue where he had a single alcoholic beverage. He left the barbeque and went to a liquor store in or around Holtsville where he purchased two pints of vodka. He left the liquor store and consumed one of the bottles of vodka during his approximately 45 minute to one hour drive to Long Beach.

When plaintiff arrived in Long Beach, Nielsen was on motor patrol. While Nielsen was parked on the westbound side of Park Avenue just east of its intersection with Franklin Boulevard, plaintiff stopped for a red light directly next to him. Plaintiff was screaming on his cell phone at the time, and when the light turned green, the plaintiff pulled away from the light while still talking on his cell phone. Officer Nielsen then decided to conduct a car stop and pulled behind him. Upon seeing the police car's flashing lights, plaintiff pulled over. As he pulled over, plaintiff poured the contents of the second vodka bottle on the floor of the car. He then became fearful that he was going to get arrested given that he had been drinking, was driving with a revoked license, and had a prior DWI. As a result, he put the car in gear and sped

away, passing a number of stop signs without stopping, and made a left turn onto a residential street. Officer Nielsen followed plaintiff in his car. Plaintiff then made a right turn into a CVS drugstore parking lot and travelled through that lot in the wrong direction. Plaintiff made a right turn out of that parking lot onto a residential street. When plaintiff approached Lincoln Boulevard and attempted a right turn, he almost collided with a vehicle parked on Lincoln. Plaintiff ultimately completed the right turn and began travelling southbound on Lincoln. He then crossed over East Fulton Street without stopping at the stop sign and then made a U-turn at East Hudson Street, such that he was now traveling northbound on Lincoln. Plaintiff then made a left turn onto east Fulton Street with Nielsen less than five car lengths behind him.

Plaintiff stopped his vehicle in front of a house at 325 East Fulton Street. Officer Nielsen also came to a stop such that his passenger side door was adjacent to plaintiff's driver's side door. Officer Nielsen then got out of his car and began walking towards the front of plaintiff's vehicle. As soon as Nielsen exited his vehicle, he started yelling commands to plaintiff to stop and show his hands. Plaintiff ignored those commands, got out of his vehicle, and began running eastbound. Officer Nielsen observed that plaintiff was muscular, approximately 5'10" to six foot, and about 200 pounds.

When Nielsen exited his vehicle, he drew his firearm, but after realizing plaintiff was unarmed, he holstered the weapon and drew his baton. He then began a foot pursuit of plaintiff. Defendants claim that as Nielsen was closing the gap between himself and the plaintiff and got within 15-20 feet of him, the plaintiff slowed down and turned to look at him. It is not clear from Nielsen's testimony precisely how much of plaintiff's body turned. Plaintiff, however, claims that he only turned his head to the right to see how far away Nielsen was. Officer Nielsen claims that his instincts told him that plaintiff was turning to fight him. So, he took a single

3

swing of the baton, aiming for the mid-bicep area. Officer Nielsen states in his affidavit, however, that he missed the mid-bicep area and "either missed the shoulder altogether or the single blow bounced off the shoulder and hit him by the eye." (Nielsen Aff. ¶ 12.)

Subsequently, other officers arrived on the scene, plaintiff was restrained on the ground, and after a period of resistance, the officers were able to handcuff him. Officer Nielsen observed a laceration to plaintiff's right eye and called an ambulance. The ambulance transported plaintiff to South Nassau Hospital.

## DISCUSSION

### I.     Legal Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.,* 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material: "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012); *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that

show that there *is* a genuine issue of material fact to be tried. *Wright v. Goord,* 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French,* 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson,* 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange,* 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady,* 863 F.2d at 210–11). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.' " *Brady,* F.2d at 211 (citing *Matsushita,* 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other

5

facts immaterial." *Crawford,* 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

## II. *Plaintiff's Remaining Claims*

Plaintiff discontinued his claims against Nassau County and the Nassau County Sheriff's Department via a stipulation submitted on April 1, 2014. Additionally, in a letter dated March 18, 2014, plaintiff withdrew several other claims, writing, "[i]n an effort to narrow the issues, plaintiff voluntarily withdraws his federal claims for false arrest and unlawful seizure against all the defendants, his denial of prompt medical attention claim, and his claims for negligence and negligent hiring and retention." (DE 17.) Furthermore, in his opposition brief, plaintiff states that "[t]he remaining claims are: (1.) The use of excessive force by defendant Nielsen in violation of the Fourth Amendment of the U.S. Constitution;[1] (2.) The *Monell* claim against the City of Long Beach and the Long Beach Police Department for failure to investigate and ratification of defendant Nielsen's excessive use of force during the arrest of plaintiff and (3.) The State claims for excessive force in effectuating the arrest." (Pl.'s Opp'n at 2-3.) Plaintiff makes no mention of any other claims in his brief, and therefore, to the extent the Complaint contains any other remaining claims, they are considered abandoned and are dismissed.

## III. *Excessive Force*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment

---

[1] It should be noted that plaintiff sues Nielsen in both his official and individual capacities. As defendants point out, however, the claims against Nielsen in his official capacity and the claims against the City of Long Beach and Long Beach Police Department are redundant. Accordingly, the claim against Nielsen in his official capacity is dismissed. *See Bissinger v. City of New York*, 2007 WL 2826756, at \*4 (S.D.N.Y. Sept. 24, 2007). The claims against the City and its police department are addressed in part IV of this decision.

requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citation omitted). Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id*. at 396-97. Furthermore, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (internal quotation marks and citation omitted). That question "requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000).

Viewing the facts in the light most favorable to the plaintiff, there is a genuine question of material fact as to whether Nielsen's conduct was reasonable. Although it is undisputed that Nielsen used his baton to strike the plaintiff and that the baton hit the plaintiff in the eye, the parties have provided different accounts regarding their positioning when plaintiff was struck. Plaintiff asserted at his deposition that at the time he was struck his body was not facing Nielsen, and he had only turned his head to see how close the officer was to him. (Plaintiff's Dep. at 41-42.) Officer Nielsen testified that prior to the baton strike, the plaintiff "turned to look at [him]," slowed down, and came to a complete stop. (Nielsen Dep. at 42-43.) A reasonable juror could find, based on plaintiff's testimony, that plaintiff turned only his head and did not stop and face

7

the defendant, and that based on this positioning, plaintiff did not pose enough of a threat to render Nielsen's baton strike reasonable under these circumstances.

*Hinton v. Patnaude*, 1997 WL 727529 (N.D.N.Y. Oct. 21, 1997), a case cited by defendants, does not dictate a contrary conclusion. There, a traffic stop escalated into a struggle between the driver of the vehicle, the plaintiff, who was a passenger, and the two officers who pulled over the vehicle. After a bench trial, the court found that given that a struggle between plaintiff and one of the officers was taking place on the shoulder of the New York State Thruway while the driver was left unsupervised on the other side of the car, the defendant's "use of his baton in an attempt to quickly immobilize plaintiff's right arm was reasonable under the circumstances" even though the officer missed the plaintiff's arm and, as found by the trial judge, "unintentionally hit him in the head." *Hinton*, 1997 WL 727529, at *5. Here, under both parties' renditions of the event, plaintiff was not engaged in an ongoing struggle with the arresting officer in a precarious situation along the edge of a high speed highway. Instead, according to the plaintiff, he was endeavoring to avoid a physical confrontation by fleeing the area.

In sum, there is a material issue of fact as to whether Nielsen used excessive force in arresting plaintiff. Which is to say, *Hinton* does not support defendants' position vis-à-vis plaintiffs' excessive force claim.

*Qualified Immunity*

Although summary judgment is not available to resolve plaintiff's claim, that does not fully resolve the instant motion because Nielsen's affirmative defense of qualified immunity[2]

---

[2] "Qualified immunity is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996).

8

remains to be determined. *See Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) ("The Supreme Court has . . . made clear that even officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection from the sometimes hazy border between excessive and acceptable force.") (internal quotation marks and citation omitted).

Assuming for purposes of this motion that there was a constitutional violation, summary judgment for Nielsen is appropriate based on qualified immunity. The Supreme Court has recently addressed that doctrine in the context of an excessive force claim as follows:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. ——, –——, 132 S. Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed.2d 271 (1986).
>
> "We have repeatedly told courts ... not to define clearly established law at a high level of generality." [*Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2084.] The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per curiam* ) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed.2d 272 (2001)). Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is

> sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." 533 U.S., at 205, 121 S.Ct. 2151.

*Mullenix v. Luna*, 136 S. Ct. 305 (2015).

Viewing the facts most favorably to the plaintiff, it is not, as defendants contend and in the language of *Mullenix*, "sufficiently clear that every reasonable" officer in Nielsen's position would have understood that hitting the fleeing plaintiff in the head with a baton was unconstitutional in this specific context. Indeed, based on the case law provided by the parties, there appears to be a dearth of decisions at any federal level involving facts sufficiently similar to those faced by Nielsen to provide guidance as to the unconstitutionality, if such be the case, of the officer's conduct. More importantly for qualified immunity purposes, that same deficiency extends to a lack of instructive decisions at the Supreme Court or Second Circuit level.[3]

In urging a contrary conclusion, plaintiff has not pointed to any precedent existing at the time of the incident placing the constitutionality of Nielsen's acts beyond debate. Instead, he relies primarily on one district court case from this circuit, *Belanger v. City of Hartford*, where the court found that the defendant was not entitled to qualified immunity on summary judgment. In that case, three officers responded to an altercation taking place in the parking lot of a bar, and plaintiff claimed that one of the officers struck him in the face with a baton when he "rotated [only] his upper torso to the right" toward the officer. 578 F. Supp. 2d 360, 362-63 (D. Conn. 2008). The court in that case found that "[a] reasonable police officer should know that swinging a baton at an individual's face while [he is] facing away from the officer without prior warning would constitute a violation of that individual's right to be free from excessive force."

---

[3] *Moore v. Vega*, 371 F. 3d 110, 114 (2d Cir. 2004) ("Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established.")

*Id*. at 366.  The court, however, did not cite any authority indicating that this proposition was based on precedent rendering the constitutional question at issue here beyond debate.  Moreover, *Belanger* alone does not provide the required persuasive precedent, especially given that its facts are not similar enough to those here such that based on that case, reasonable officers should have known Nielsen's conduct was unconstitutional.  In particular, the baton strike in *Belanger* did not result from a single officer's lengthy car chase and foot pursuit of a suspect through a residential neighborhood, where it is undisputed that innocent bystanders were present.  Thus, Nielsen is entitled to qualified immunity, and plaintiff's Fourth Amendment claim against Nielsen is dismissed.

## IV. *Plaintiff's Monell Claim*

A municipality may not be held liable under § 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations.  *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).  A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through . . . official decisionmaking channels."  *Id*. at 690-91.  Therefore,

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Coon v. Town of Springfield, Vt.,* 404 F.3d 683, 686 (2d Cir. 2005) (quoting *Monell,* 436 U.S. at 694).

In order to establish the existence of a municipal policy or custom, a plaintiff may demonstrate that his or her constitutional injuries arose from:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees.

*Williams v. City of Mount Vernon,* 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).

Plaintiff argues that the Long Beach municipal defendants' failure to conduct a proper investigation of the events leading up to plaintiff's arrest and the "unquestioning acceptance of defendant Nielsen's version of the facts" gives rise to municipal liability. (Pl.'s Mem. in Opp'n at 20.) However, plaintiff has not offered any evidence that this allegedly improper conduct was attributable to a formal policy or that the type of investigative failures alleged here were widespread. Nor has he offered any evidence of a failure to train or supervise officers. Although he takes issue with the conduct of Lieutenant Ragona, who supervised the crime scene investigation, he does not argue that Ragona was a final decision-maker or policy-maker whose actions could be attributed to the municipality. As a result, plaintiff has failed to raise a genuine question of fact as to municipal liability.

*Hogan v. Franco*, 896 F. Supp. 1313 (N.D.N.Y. 1995), an excessive force case upon which plaintiff primarily relies, does not convince the Court otherwise. The court in *Hogan* found that the evidence, including the police chief's statement that it was not the department's policy to coach officers on how to prepare investigative reports, suggested that the municipality's

actions "amounted to deliberate indifference with regard to the supervision and discipline of its police officers." *Id.* at 1319-20. Here, however, plaintiff has not pointed to any evidence regarding the Long Beach Police Department's policy with regard to investigations. Moreover, unlike in *Hogan*, plaintiff has not pointed to any evidence that the municipal defendants "repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainant's civil rights." *Id.* at 1320 (citing *Ricciuti v. N.Y.S. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991). As a result, plaintiff's *Monell* claim is dismissed.

## V.     *State Law Claims*

Having dismissed plaintiff's federal constitutional claims, there is no longer any independent basis for federal jurisdiction in this action. Pursuant to 28 U.S.C. § 1367(c)(3), the Court "may decline to exercise supplemental jurisdiction" over a state law claim when the Court "has dismissed all claims over which it has original jurisdiction." As noted above, plaintiff contends that his only remaining state law claims relate to excessive force, yet he fails to address the merits of any such claim in his opposition papers. In any event, to the extent plaintiff claims that any state law claims remain, the Court declines to exercise supplemental jurisdiction over them.

## *CONCLUSION*

For the reasons set forth above, the defendants' motion for summary judgment is granted.

The clerk of the Court is directed to close this case.

*SO ORDERED.*

Dated: Central Islip, New York
January 28, 2016

/s/
Denis R. Hurley
Unites States District Judge